650

## QUINN v TOBIN

Ohio Appeals, 2nd Dist, Greene Co

No 445.   Decided March 28, 1939

F. C. Johnson, Xenia, for plaintiff.
Marcus McAllister, Xenia and Baldwin & Nolan, for defendant.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in behalf of the defendant.

The action was for property damages to the automobile of plaintiff and for loss of the use of the car claimed to have been sustained by reason of the negligence of the defendant. The material allegations of the petition are short. We quote from the petition. Plaintiff says,

"that on or about February 22, 1938, he was driving a 1936 Chevrolet Town Sedan on Route 68 toward Xenia from Osborn; that at a point about 3 miles north of Xenia there is a one lane bridge; that plaintiff had entered said bridge and was about three-fourths of the way through said bridge, when the defendant carelessly and negligently entered said bridge driving an automomile in the opposite direction and ran his car into the car of the plaintiff, causing damages to the plaintiff's car."

The damages are itemized.
Plaintiff says,

"that said bridge was marked by State Highway Department as a one lane bridge by signs and markers and that defendant was negligent in entering said bridge at said time and said negligence caused the collision aforesaid."

The answer was a general denial.

The testimony supported the factual averments of the petition. It appears that plaintiff, driving south, and defendant, driving north, were both approaching a bridge in the night season about 7:30. The plaintiff first entered the bridge and was almost through it when the defendant came into the bridge and the cars collided near the north end thereof. The floor of the bridge was wet because of a light rain and when the plaintiff observed the defendant's car coming into the bridge he applied his brakes, skidded over beyond the center of his roadway where the cars collided. The traveled portion of the highway and of the bridge was about 16 feet wide, there being a slight variance in the evidence as to its width. The State Highway Department had placed markers on both sides of the bridge at a distance of

about 100 to 400 feet therefrom with the notation thereon. "one-lane bridge", "slow", or "narrow bridge". The markers carried reflectors which made them visible at night by the lights of on-coming cars. The trial judge in the general charge to the jury said,

"In connection with the subject of the right of way, * * * I wish to say to you * * *, that signs other than 'Stop' signs erected by the State Highway Department and precautionary in their nature are no bar to a person proceeding carefully and prudently within his right of way, if he may do so without endangering the rights of others."

Plaintiff's counsel, being of opinion that that portion of the charge above quoted did not state the law, requested the court at the conclusion of the general charge to give this instruction,

"If you find the bridge in question had markers designating it as a one lane bridge, and if you find the defendant failed to heed said signs or failed to see them, then I charge you he failed to exercise ordinary care and diligence and if this failure to exercise ordinary care and diligence was the proximate cause of the collision, and if you find the plaintiff not to have been guilty of any contributory negligence contributing directly to the collision, in that event, I charge you the defendant is liable and your verdict should be for the plaintiff in such amount as you find he is entitled to recover."

The court said,

"That's in the nature of a special charge. Overruled."

Counsel for plaintiff noted exceptions to the refusal to give the special instructions and to the general charge.

Plaintiff's theory of the law of this case is well-defined in the special instruction. It is asserted that inasmuch as the Highway Department had placed a cautionary sign along the highway in the approach to the bridge indicating that it was a "one lane bridge" that it became the obligation of the defendant to yield "the right of way in this bridge and the defendant had no right to enter until the plaintiff had cleared the bridge."

At the outset there is some discussion in the briefs as to the right of plaintiff to have the charge given when requested which was at the conclusion of the general charge, inasmuch as it was a special charge which ordinarily should be presented to the court before the giving of the general instructions.

In the situation presented we feel that this is immaterial. The trial judge was not required to give the special request in the form tendered but it was fair to the court for counsel for the plaintiff to specially note the particular in which it was claimed the trial judge had erred in the general charge. The special instruction amounted to nothing more than a notice to the trial judge that counsel was insisting that the general charge did not properly state the law. The special charge adds or takes nothing away from the right of the plaintiff to raise the question of law here urged because a general exception was noted to the charge and if it did not properly state the law it would be prejudicial error and require a reversal of the judgment.

The trial judge gave to the jury the usual definitions of ordinary care and stated the respective obligations of the parties in the exercise of that degree of care. He then specifically charged the jury on the question of right of way as we have heretofore indicated. It is our judgment that the view of the law as taken by the trial court was correct.

There is some diversity of testimony as to the sign, whether "one-lane bridge", "narrow bridge", or "slow". No one of these cautionary statements required that the automobilist stop in order to comply with the admonition

on the sign. If it be held that it was the obligation of the defendant to stop, it must be so determined by the implication to be drawn from the meaning of the cautionary language and not the express direction on the sign. We doubt if this determination could be arbitrarily made if it be granted that the Highway Director was authorized to place the sign and there was statutory obligation to observe the direction thereon.

Independent of this observation, however, we believe that the only legal duty with which the defendant was charged with respect to the sign was to observe ordinary care under all the circumstances. We know of no statutory obligation enjoined upon motorists to obey in any specific manner such signs as are under consideration in this case. The authority of the Highway Director to erect them is general in terms and we know of no provision of law which makes it a violation not to observe the specific directions appearing on the signs. All offenses in Ohio are provided by statute. There being no provision for such an offense as was contemplated in the charge requested by counsel for the plaintiff, it could not be the basis of an instruction that the plaintiff was chargeable with negligence as a matter of law.

We have had similar questions before us on many cases and are bound to the present determination by several former decisions, two of which only now come to our attention. **Patterson, Admrx., etc. v Pennsylvania Railroad Company, 26 Abs. 467.** In this case it was claimed that the driver of the truck approaching a railroad crossing was chargeable with contributory negligence in not observing a highway sign along the highway to the approach to the crossing. We said in part,

"However, the fact that the highway sign was in the highway should not, as a matter of law, bind Patterson to the knowledge of the exact location of a railroad crossing further ahead on the highway. An analogous situation has been before this court many times in actions for damages growing out of automobile collisions at intersections. It is common practice to place "stop" signs upon the highway at a short distance from an intersecting road though they are not so placed by authority of law. An automobilist, though he may know of the intersection, who fails to heed one of these signs is not chargeable with negligence per se, but whether or not he should have stopped is a question for a jury and the fact that a sign was present may be by them considered."

**Clickenger v Patterson, 22 Abs 204,** we there held that,

"The refusal to give a requested instruction that a driver is not necessarily bound to stop at a stop sign but only to use the ordinary care of a reasonably prudent man under the same or similar circumstances is prejudicial error, where there is no statute requiring such stop, the signs are construed as a warning only, and the instruction is clear and applicable to the issues."

The situation presented, of course, had no relation to the obligation now enjoined upon a motorist to comply with a stop sign erected by authority of §6310-35 GC.

In neither of these cases was the situation presented identical with that found in the instant cause. However, the principle of law involved is the same. The sign at the approach to the bridge put the defendant on notice of the cautionary language thereon. It did not require any specific course of conduct on his part but charged him with ordinary care in the light of the knowledge of the sign together with all other facts and circumstances appearing. We find no error in the general charge nor in the refusal to give the special request. The judgment will be affirmed.

GEIGER & BARNES, JJ, concur.